UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No. 5:15-CV-562

| | |
|---|---|
| **GENE MYRICK**<br><br>**Plaintiff**<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC, and FIRST FEDERAL BANK**<br><br>**Defendants** | **COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**COMES NOW** the Plaintiff, Gene Myrick, by and through counsel and brings this complaint, in support of which he respectfully shows this Court the following:

## I. PRELIMINARY STATEMENT

1. This is an action for damages pursuant to Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq.*, and N.C. Gen. Stat. § 75-1.1.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§1331 and 1367, and 15 U.S.C. § 1681p.

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b)(2).

## III. PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. At all times relevant to this action, the Plaintiff, Gene Myrick, was a "consumer" as that term is defined by 15 U.S.C. § 1681(c).

6. First Federal Bank (FFB) is a business entity which regularly conducts business nationally and has its principal place of business at 200 East Cumberland St., Dunn, NC., 28334.

7. FFB is a "furnisher" of consumer credit information as defined in 15 U.S.C. § 1681s-2.

8. At all times relevant to this action, FFB was engaged in commerce in North Carolina.

9. At all times relevant to this action, FFB was a "person" as that term defined in 15 U.S.C. § 1681a(b).

10. FFB can be reached for service through its President and CEO, Clement E. Medley, at 200 East Cumberland St., Dunn, NC 28334.

11. Equifax Information Services, LLC ("Equifax"), is a Georgia limited liability company doing business throughout the country and in the state of North Carolina.

12. Equifax is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

13. Equifax can be reached for service through its Registered Agent, Dean C. Arvidson, at 1550 Peachtree Plaza, NW H46, Atlanta, Georgia, 30309.

14. At all times relevant to this action, Equifax was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

15. At all times relevant to this action, Equifax was a "person" as that term defined in 15 U.S.C. § 1681a(b).

### IV. FACTUAL ALLEGATIONS

16. October 12, 2009: Plaintiff filed a bankruptcy petition in the Eastern District of North Carolina. The case number was 09-08901. The trustee was John Logan.

17. FFB was properly noticed on the creditor matrix in the bankruptcy filing.

18. February 11, 2010: FFB filed Claim Number 39-1 in this case for $42,985.00.

19. February 24, 2011: FFB filed amended Claim Number 39-2 in this case.

20. These filings demonstrate active participation in the Plaintiff's bankruptcy case.

21. August 30, 2011: the trustee's Final Report and Account and Notice Thereof was mailed to FFB.

22. September 9, 2011: The Plaintiff received a discharge with his wife, who was his joint debtor.

23. After September 9, 2011 Plaintiff owed nothing to FFB.

24. Subsequent to Plaintiff's discharge in bankruptcy he was denied loans or extensions of credit from the following lenders:

    a. June 3, 2013: Quicken Loans

    b. September 7, 2013: Quicken Loans

    c. October 23, 2013: New Day Financial

    d. December 8, 2013: GE Capital

    e. December 11, 2013: Care Credit

    f. September 3, 2014: Sears

    g. September 10, 2014: Sears

    h. June 12, 2015: USAA

    i. July 31, 2015: Springleaf Financial Services

    j. July 29, 2015: State Employees Credit Union

25. August 16, 2014: Equifax reported to Plaintiffs Life Lock tri bureau credit report a credit score of 585, total balances being owed of $317,269.00 with monthly payments due of $2,999.00. It also listed 2 accounts as unsatisfactory, and 6 derogatory accounts.

26. That report was inaccurate.

27. September 13, 2014: Equifax reported to Plaintiffs Life Lock tri bureau credit report the FFB trade line stating an open account with a balance of $41603, $2000 past due and 90+ days past due.

28. That report was inaccurate.

29. November 3, 2014: Equifax credit report stated Plaintiffs account was 120+ days past due, $2,000.00 past due and with a balance of $41,603.00.

30. That report was inaccurate.

31. November 3, 2014: Plaintiff filed an online dispute with Equifax stating the reported open account with FFB was included in his bankruptcy. Plaintiff submitted the Trustees Final Report dated August 30, 2011 showing 0 balance owed.

32. November 16, 2014: Equifax updated Plaintiffs credit report stating the disputed FFB trade line to show "This item is currently under investigation. You should receive the results of our investigation soon."

33. November 25, 2014: Equifax entered the results of its reinvestigation of the FFB account number 230016381*. The confirmation number is 4307040268.

34. November 25, 2014: Equifax results of reinvestigation to Plaintiff stated, "We have researched the credit account. Account #-230016381* The results are: This creditor has verified to OUR company that the current status is being reported correctly. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact: First Federal Bank, 200 E Divine St, PO Box 1049, Dunn NC 28335-1049."

35. November 25, 2014: Plaintiffs Equifax credit report shows Plaintiff owed $41,099 with a past due amount of $2000 to FFB. The report confirmation number is 4307040268.

36. That report was inaccurate.

37. January 31, 2015: Equifax reported to Plaintiffs Life Lock tri bureau credit report the FFB trade line as an open account, 90+ days past due owing a balance of $41603 with $2000 past due.

38. That report was inaccurate.

39. February 3, 2015: Plaintiff notified Equifax of his bankruptcy discharged via certified mail. It was received and signed for on February 9, 2015 by an employee of Equifax.

40. February 16, 2015: Equifax response to Plaintiffs dispute states "We have reviewed the identification information and your name has been updated."

41. February 16, 2015: Equifax response to Plaintiffs dispute states "We have reviewed your concerns and out conclusions are: Please be specific with your concerns by listing the account names, numbers and the nature of the dispute."

42. July 30, 2015: Equifax negative accounts summary reports FFB with a balance of $41099, $2000 past due with account status of "collection".

43. That report was inaccurate

44. August 2, 2015: Equifax credit report lists a balance of $41009 with $2000 past due on FFB trade line.

45. That report was inaccurate.

46. August 2, 2015: Equifax credit summary reports that as of July 30, 2015, Plaintiff has 5 total open accounts, total debt to credit ratio of 85% and a credit score of 669.

47. That report was inaccurate.

48. Subsequent to Defendants' continued misreporting on Plaintiff's credit report, Plaintiff was denied loans or extensions of credit from the following lenders:

    a. June 12, 2015: USAA

    b. July 29, 2015: State Employees Credit Union

    c. July 31, 2015: Springleaf Financial Services

49. Upon information and belief, Plaintiff's credit reports and file have been obtained from Defendants and various Credit Reporting Agencies, and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving many different credit offers and opportunities, known and unknown, and from receiving the most favorable terms in financing and interest rates for credit offers that were ultimately made.

50. As a result of Defendants' conduct, Plaintiff has suffered actual damages and serious financial and pecuniary harm arising from monetary losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, out-of-pocket expenses including, but not limited to, local or long distance telephone calls, postage, faxing and other related costs, all of which will continue into the future to Plaintiff's great detriment and loss.

51. As a result of Defendants' conduct, Plaintiff has suffered great physical, emotional and mental pain and anguish, and he will continue to suffer the same for an indefinite time in the future, all to his great detriment and loss.

52. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm (for example, a dramatic increase in his homeowner's and automobile insurance rates) arising from the injury to credit rating and reputation, and he will continue to suffer the same for an indefinite time in the future, all to his great detriment and loss.

53. As a result of Defendants' conduct, Plaintiff has suffered a decreased credit score as a result of the misreported trade lines and multiple inquiries appearing on his credit file.

54. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

55. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## V. VIOLATIONS of the FAIR CREDIT REPORTING ACT

56. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

### Equifax's Failure To Adopt and/or Follow Reasonable Procedures

57. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

58. 15 U.S.C. § 1681n imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. See 15 U.S.C. § 1681n(a).

59. 15 U.S.C. § 1681o provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

60. Despite actual and implied knowledge that Plaintiff's debts to FFB were discharged, Equifax readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

61. On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

62. Through Plaintiff's communications with Equifax, Equifax knows, or has sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is extremely inaccurate and damaging to Plaintiff.

63. Nevertheless, Equifax has taken no measures to stop painting a false and damaging picture about Plaintiff.

64. Plaintiff was unable to obtain financing because of the grossly inaccurate credit file maintained by Equifax.

65. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the higher interest rate he now pays.

66. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about him.

67. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of financing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

68. Upon information and belief, Equifax has been sued on multiple occasions over recent years for falsely reporting an individual as owing debt that was discharged in bankruptcy despite being on notice that such debt was discharged.

69. Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

70. Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

71. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2)

72. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

73. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

74. On multiple occasions in 2014 and 2015, Plaintiff initiated disputes with Equifax requesting that they correct and/or delete a specific item in his credit file that is patently inaccurate, misleading and highly damaging to him, namely, references to him owing an outstanding balance to FFB.

75. Plaintiff specifically advised Equifax on numerous occasions that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade lines be corrected accordingly.

76. Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so deficient as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

77. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681i(a)(1) with respect to each dispute lodged by Plaintiff.

78. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

79. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of financing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

80. Upon information and belief, Equifax has been sued on multiple occasions over recent years for refusing to correct its patently false reporting of an individual as owing money on a trade line despite being on notice that such debt was discharged in bankruptcy.

81. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

82. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

### FFB Failure To Conduct Reasonable Reinvestigations

83. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information reported about them, to wit:

    After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall:

    (A) conduct an investigation with respect to the disputed information;
    (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
    (C) report the results of the investigation to the consumer reporting agency;
    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly –
        (i) modify that item of information;
        (ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

*See* 15 U.S.C. § 1681s-2(b)(1).

84. October 12, 2009: Plaintiff filed a bankruptcy petition in the Eastern District of North Carolina, Raleigh Division. The case number was 09-08901. The trustee was John Logan.

85. FFB was properly noticed on the creditor matrix in the bankruptcy filing.

86. September 9, 2011: The Plaintiff was granted a discharge with his wife, who was his joint debtor. At that point Plaintiff owed nothing to FFB.

87. In November 2014, Plaintiff contacted Equifax to dispute the accuracy of the information being reported about him.

88. Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), FFB received notification of this dispute from Equifax.

89. FFB has repeatedly failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of 15 U.S.C. § 1681s-2(b)(1).

90. Notwithstanding FFB's actual knowledge that Plaintiff had discharged his alleged debt in bankruptcy, FFB's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

91. In addition to the violation as described above, FFB failed to satisfy its duty under 15 U.S.C. § 1681s-2(b) of updating incomplete or inaccurate information it had previously reported to CRAs upon receipt of each notice from Equifax that Plaintiff disputed the accuracy of the previously reported information.

92. FFB's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an

extent that it [could] be expected to have an adverse effect" on Plaintiff. *Gorman v. Wolpoff & Abramson, LLP, et al.*, 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

93. As a direct and proximate result of FFB's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

94. FFB's indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against FFB, pursuant to 15 U.S.C. § 1681n(a)(2).

## VI. VIOLATIONS OF N.C. GEN. STAT. § 75-1.1

95. The foregoing paragraphs are incorporated as though the same were set forth at length herein

96. The Defendants have libeled the Plaintiff by impeaching him in his business practices.

97. This was accomplished by the facts set out herein, including publishing false information about alleged debts.

98. The actions of the Defendants resulted in actual injury to the Plaintiff by lowering his credit score and causing him to be denied credit and loans with better interest rates.

99. Such actions are prohibited by the laws of North Carolina.

100. By the unlawful conduct alleged herein, Defendants engaged in unlawful business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

101. By the unlawful conduct alleged herein, Defendants engaged in unfair business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

102. By the unlawful conduct alleged herein, Defendants engaged in deceptive business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

103. Defendants' acts and omissions as alleged in this Complaint proximately caused economic injury to Plaintiff, are in and affecting commerce, have the capacity to deceive an ordinary consumer, are unscrupulous, immoral, and oppressive, and constitute unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, thereby entitling Plaintiffs to the relief requested in this Complaint.

104. As a direct, foreseeable, and proximate result of Defendants' wrongful actions alleged herein, Plaintiff has been damaged in an amount to be determined according to proof at the time of trial, in addition to equitable and/or injunctive relief, as specified in the prayer plus the right to attorney fees and treble or punitive damages pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## VII. JURY TRIAL DEMAND

105. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

a) Actual, punitive and statutory damages pursuant to N. C. Gen. Stat. § 75-16;

b) Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 75-16 and §75-1.1;

c) Actual or statutory damages pursuant to 15 U.S.C. §§1681n and 1681o;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n and 1681o;

e) Punitive damages pursuant to 15 U.S.C. §§1681n;

f) An order directing that Defendants send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and

g) Such other and further relief as may be necessary, just and proper.

**TODAY** is October 22, 2015.

**COLLUM & PERRY**

By: */s/ M. Shane Perry*
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Fax: 704-663-4178
shane@collumperry.com