UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:15-CV-00562-BR

GENE MYRICK,                              )
                                          )
                    Plaintiff,            )
            v.                            )            ORDER
                                          )
EQUIFAX INFORMATION SERVICES,             )
LLC,                                      )
                                          )
                    Defendant.            )

This matter is before the court on the 21 October 2016 motion for summary judgment

filed by defendant Equifax Information Services, LLC ("Equifax").  (DE # 23.)  Plaintiff Gene

Myrick filed a response in opposition on 22 December 2016, (DE # 27), to which Equifax replied

on 17 January 2017, (DE # 29).  Also before the court is the parties' joint motion for continuance

of the trial date.  (DE # 34.)  The issues raised have been fully briefed and are now ripe for

disposition.

## I.  BACKGROUND

This case arises from a dispute about information that Equifax, a consumer reporting

agency ("CRA"), maintained and reported with respect to an account plaintiff held with First

Federal Bank ("FFB").  On 12 October 2009, plaintiff filed a Chapter 13 bankruptcy petition

with the bankruptcy court for this district.  See Case No. 09-08901 (Bankr. E.D.N.C. Oct. 12,

2009).  On 9 September 2011, the bankruptcy court entered an order granting plaintiff a

discharge, which plaintiff claims included any debt on the FFB account.  (See Smith Decl., DE #

25-1, ¶¶ 33-34; see also id., Ex. 1, at 12-13.)

In July 2014, plaintiff obtained a copy of his Equifax credit report, which did not reflect the discharge status of all accounts discharged in his Chapter 13 bankruptcy. (Myrick Dep., DE # 25-1, at 17.) With respect to the FFB account, plaintiff alleges that the trade line on this credit report showed an open balance of $41,603 with a past due amount of $2,000. (Compl., DE # 1, ¶¶ 25-26.) Plaintiff also claims that Equifax reported the FFB account as 90 days past due in September 2014 and 120 days past due in November 2014. (Id. ¶¶ 27, 29.)

On 3 November 2014, plaintiff submitted a dispute through Equifax's website disputing the reporting of the FFB account on the basis that the account had been discharged by the bankruptcy court. (Smith Decl., DE # 25-1, ¶ 33.) After receiving plaintiff's dispute, Equifax sent an Automated Consumer Dispute Verification ("ACDV") to FFB to verify the account information. (Id.) FFB responded to the ACDV by confirming that plaintiff had an open account with a scheduled payment amount. (Id.) On 25 November 2014, Equifax informed plaintiff that it had verified the account information was being reported correctly. (Id.)

Several months later, on 12 February 2015, Equifax received a dispute letter from plaintiff notifying it of the bankruptcy discharge and disputing the balances on accounts "that were discharged through [his] bankruptcy." (Id. ¶ 34.) Attached to the dispute letter was a copy of the bankruptcy court's discharge order. (Id.) The discharge order did not identify the particular debts that were discharged, and included a statement that generally explained that some debts are discharged and some debts are not discharged. (See Smith Decl., Ex. 1, DE # 25-1, at 12-13.) Upon receiving plaintiff's letter, Equifax sent a consumer communication to plaintiff instructing him to: "Please be specific with your concerns by listing the account names, numbers and the nature of the dispute." (Smith Decl., DE # 25-1, ¶ 35.) Plaintiff did not follow-up and provide the requested information. (Id.)

On 22 October 2015, plaintiff brought this action against both FFB and Equifax, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. (DE # 1.) Plaintiff seeks actual, statutory, and punitive damages, as well as attorney's fees. (Id. at 14-15.) He also seeks "[a]n order directing [Equifax] send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information." (Id. at 15.)

Shortly after plaintiff filed this lawsuit, FFB corrected the information regarding the discharge of plaintiff's account in December 2015. (Myrick Dep., DE # 25-1, at 19; Smith Decl., DE # 25-1, ¶ 36.) On 24 May 2016, plaintiff and FFB stipulated to the dismissal with prejudice of all claims against FFB. (DE # 22.) Equifax filed the instant motion for summary judgment on 21 October 2016. (DE # 23.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether an issue of fact exists, the court must view the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).

The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Specifically, the moving party bears the burden of identifying those portions of "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the moving party believes demonstrate an absence of any genuine issue of material fact. Id. at 323. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmoving party may not rest on the allegations or denials in his complaint or other pleadings, but must come forward with affidavits or other verified evidence showing that there is a genuine issue for trial. Celotex, 477 U.S. at 322; see also Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish an essential element of the party's claim on which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

### III. ANALYSIS

#### A. FCRA Claims

The FCRA is a statutory scheme designed to regulate the consumer reporting industry and ensure fair and accurate credit reporting. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007). "[The] FCRA does not impose strict liability on consumer reporting agencies for inaccuracies in reporting." Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 417 (4th Cir. 2001). Instead, it creates a private right of action against CRAs for the negligent or willful violation of any duty imposed by the FCRA. 15 U.S.C. § 1681o (negligent violations);15 U.S.C. § 1681n (willful violations). A consumer aggrieved by a creditor's violation of the FCRA may recover actual damages caused by negligent violations of the statute, and both actual and punitive damages for willful noncompliance. Sloane v. Equifax Info. Servs., LLC, 510 F.3d 495, 500 (4th Cir. 2007) (citing 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2)).

In his complaint, plaintiff alleges that Equifax willfully and negligently violated two separate provisions of the FCRA: 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i(a).  (Compl., DE # 1, ¶¶ 57-82, 83-94.)  Plaintiff claims that Equifax's continued reporting of erroneous information caused him "economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, [and] expenditure of considerable time and out-of-pocket expenses[.]"  (Id. ¶¶ 79, 93.)  He also claims damages for emotional and mental distress, in the form of worry, fear, frustration, and embarrassment.  (Id.)

## 1. Section 1681e(b)

Plaintiff claims that Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by issuing an inaccurate credit report that did not reflect that the debt on the FFB account was discharged.  (Compl., DE # 1, ¶¶ 57-82 ).  "[Section] 1681e(b) governs the original compilation of information for a credit report."  Alston v. Equifax Info. Servs., LLC, No. TDC-13-1230, 2016 WL 5231708, * 6 (D. Md. Sept. 21, 2016).  This provision requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy" of its reports.  15 U.S.C. § 1681e(b).  For a plaintiff's § 1681e(b) claim to survive summary judgment, he must present evidence tending to show: (1) the consumer report contains inaccurate information; and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy of the consumer report.  See Dalton, 257 F.3d at 415.

In its motion for summary judgment, Equifax does not address plaintiff's allegation that its report showing a positive balance and past due amount on the FFB account was inaccurate. Instead, Equifax grounds its motion on plaintiff's failure to demonstrate that Equifax neglected to follow reasonable procedures to assure maximum accuracy.  (Def.'s Supp. Mem., DE # 24, at

9.)  Equifax contends that plaintiff cannot establish violation of the reasonableness standard

because Equifax relied on information furnished by FFB, a vetted and experienced source of

information, to generate plaintiff's report.  (Id.)

The issue of whether a CRA followed reasonable procedures will be a "jury question in

the overwhelming majority of cases."  Dalton, 257 F.3d at 416 (citation and quotation marks

omitted).  However, summary judgment may be appropriate when the reasonableness or

unreasonableness of a CRA's procedures is beyond question.  Wright v. Experian Info.

Solutions, Inc., 805 F.3d 1232, 1239 (10th Cir. 2015); Crabill v. Trans Union, L.L.C., 259 F.3d

662, 664 (7th Cir. 2001).  In determining whether a plaintiff has carried his burden to create a

triable issue of fact with respect to reasonableness, a plaintiff need only "'minimally present

some evidence'" from which the trier of fact can infer that the CRA failed to follow reasonable

procedures.  Wilson v. Cargo Group, Inc., 518 F.3d 40, 42 (D.C. Cir. 2008) (quoting Stewart v.

Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984)).

While the reasonableness of a CRA's procedures is ordinarily a question of fact, the

implementing regulations for the FCRA explain that a CRA follows reasonable procedures

where it relies on "information that it receives from a source that it reasonably believes to be

reputable" unless "the information furnished appears implausible or inconsistent" or the CRA

has some notice of systemic problems with the accuracy of information from a particular source.

Jianqing Wu v. Trans Union, No. AW-03-1290, 2006 WL 4729755, *7 (D. Md. May 2, 2006)

(citing Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 app.))  Consistent with

these regulations, "courts have found with respect to the initial collection of information that,

absent reason to believe information from generally credible sources is inaccurate, a CRA is not

required under Section 1681e(b) to go beyond its initial source of information to verify that

information." Burke v. Experian Info. Solutions, No. 1:10-CV-1064 (AJT/TRJ), 2011 WL 1085874, *5 (E.D. Va. Mar. 18, 2011) (citing Henson v. CSC Credit Servs., 29 F.3d 280, 286-86 (7th Cir. 1994)).

Here, Equifax has provided an account of the procedures it follows to assure the accuracy of its reports through the declaration of Pamela Smith, a Legal Support Associate for Equifax. (See Smith Decl., DE # 25-1.) In the declaration, Smith describes Equifax's relationship with its sources of information, noting that Equifax accepts credit information only from sources "that Equifax determines to be reasonably reliable based upon the source's reputation in the community, its own investigation, or Equifax's longstanding business relationship with it." (Id. ¶ 9.) Smith states that Equifax's sources of information are required by contract to provide accurate information and comply with all FCRA requirements. (Id. ¶ 13.) Additionally, Smith provides a detailed description of the procedures Equifax followed with respect to plaintiff's dispute. (Id. ¶¶ 32-35.)

Through Smith's declaration, Equifax has submitted evidence showing that FFB is a reputable and experienced source of information. Therefore, the viability of plaintiff's claim under § 1681e(b) turns on whether there is any evidence showing that Equifax's reliance on the information furnished by FFB was unreasonable. In support of his argument that Equifax employed unreasonable procedures, plaintiff points to Equifax's response to his interrogatories, where it admitted under objection that "Equifax states that it is notified of bankruptcies by its public records vendor or from data furnishers whose accounts are included in consumer's bankruptcy. Equifax's records indicate that the public record regarding Plaintiff's bankruptcy discharge was logged into its database on September 28, 2011." (See Pl.'s Ex. D, DE # 27-4, at 11-12.) Plaintiff asserts that this response suggests that Equifax knew or should have known that

it was providing unreliable or inaccurate information regarding the FFB account. (Pl.'s Resp., DE # 27, at 6-7.)

While Equifax acknowledges that it received notice of plaintiff's bankruptcy discharge from its public records vendor in 2011, Equifax maintains that it was unaware that the FFB account was discharged by the bankruptcy court because the information it received about the discharge did not specify whether the "FFB account was included in the Chapter 13 plan, remained in the Chapter 13 plan, and was included in the Chapter 13 discharge." (Def.'s Reply, DE # 29, at 4.) Equifax further notes that the bankruptcy court's discharge order includes an "Explanation of Bankruptcy Discharge in a Chapter 13 Case," which plainly states that "[m]ost, but not all, types of debts are discharged" and "[b]ecause the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case." (See Smith Decl., Ex. 1, DE # 25-1, at 13.)

Here, plaintiff has provided no evidence to show that the information in Equifax's database was inconsistent with the information furnished by FFB. Moreover, courts have permitted CRAs to rely on a generally reputable source where it would put an unreasonable burden on CRAs to pay the costs of hiring trained legal specialists to examine court records to determine whether there is potentially inaccurate information in a consumer's credit report. See Childress v. Experian Inf. Sols., Inc., 790 F.3d 745, 747 (7th Cir. 2015) (holding a CRA's reporting procedures did not violate § 1681e(b) where it reported a bankruptcy petition without later reporting it was withdrawn because requiring a CRA to monitor all dismissals of bankruptcy petitions and investigate whether a case was voluntarily or involuntarily dismissed would "require a live human being, with at least a little legal training" and "put an enormous burden on the consumer credit-reporting agencies"); Henson, 29 F.3d at 285 (noting the

reasonable procedures requirement of § 1681e(b) does not require a CRA to go beyond the face of court records to determine whether they correctly report the outcome of the underlying action). Given the advisory language in the bankruptcy court's discharge order noting that legal assistance may be necessary to determine the effect of the discharge, the court finds that the circumstances presented in this case would have imposed a similar burden on Equifax. The court therefore concludes that Equifax complied with § 1681e(b) by relying on the information furnished by FFB to generate plaintiff's credit report. Accordingly, summary judgment on plaintiff's § 1681e(b) claim is appropriate.

### 2. Section 1681i(a)

Plaintiff also challenges the reasonableness of Equifax's post-dispute investigation procedures. He contends that Equifax negligently and willfully failed to conduct reasonable reinvestigations into his disputes and correct the inaccuracy in his credit report as required by 15 U.S.C. § 1681i(a). (Compl., DE # 1, ¶¶ 88-90.) Plaintiff bases this claim on Equifax's response to his online dispute in November 2014, which triggered Experian's duty to reinvestigate under § 1681i(a)(1)(A), and his written dispute dated February 2015, which Equifax determined did not contain sufficient information to complete additional reinvestigation.

Section 1681i(a)(1)(A) sets forth a CRA's obligations whenever a consumer notifies a CRA that the consumer disputes the "completeness or accuracy of any item of information contained in a consumer's file." Once a consumer notifies a CRA of such dispute, the CRA is required to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). Notwithstanding this obligation, a CRA may terminate a reinvestigation if it determines that the consumer failed to provide sufficient information to

investigate the disputed information.  Id. § 1681i(a)(3)(A).  To prevail on a § 1681i(a) claim, a

plaintiff must show: (1) he disputed the accuracy of an item in his credit file; (2) the CRA failed

to conduct a reasonable reinvestigation; and (3) a reasonable reinvestigation could have

uncovered the inaccuracy.  Burke, 2011 WL 1085874, at *3.

Equifax argues that it complied with its statutory obligations regarding reinvestigation by

verifying the disputed information with FFB through the ACDV process.  (Def.'s Supp. Mem.,

DE # 24, at 12-13.)  To support this argument, Equifax cites to Jianqing Wu, 2006 WL 4729755,

at *7, for the proposition that the ACDV process, which allows for the quick and efficient

transfer of information, is reasonable as a matter of law.  (Def.'s Supp. Mem., DE # 24, at 12.)

In Jianqing Wu, the court held that Equifax's reliance on the ACDV process to conduct its

reinvestigation was reasonable given that the plaintiff had reached settlements that changed the

terms of his original agreements with his creditors and "[t]he only way for Equifax to verify

plaintiff's claims was for Equifax to contact these creditors directly."  2006 WL 4729755, at *8.

In reaching this conclusion, the Jianqing Wu court emphasized that the issue of whether a CRA

can reasonably rely on the ACDV process to reinvestigate disputed information depends upon

"the nature of [p]laintiff's disputes with his creditors."  Id. at *7.

To aid in determining whether a CRA's procedures constituted a reasonable

reinvestigation under § 1681i(a), courts weigh two relevant factors: (1) "whether the consumer

has alerted the reporting agency to the possibility that the source may be unreliable or the

reporting agency itself knows or should know that the source is unreliable," and (2) "the cost of

verifying the accuracy of the information" against "the possible harm of reporting inaccurate

information."  Id.  Whatever considerations exist, it is generally "for the trier of fact to weigh

these factors in deciding whether the defendant violated the provisions of section 1681i."  Id.

(internal quotations and alterations omitted). "In short, when one goes from the § 1681e(b) to the § 1681i(a) reinvestigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly." Id.

With respect to the first factor, it is undisputed that plaintiff filed two disputes notifying Equifax of the bankruptcy discharge. In his first dispute, plaintiff informed Equifax that the FFB trade line on his credit report did not accurately reflect that the FFB account had been discharged and that he no longer owed a balance on that account. (Smith Decl., DE # 25-1, ¶ 33.) The evidence in the record also shows that plaintiff submitted a copy of the bankruptcy court's discharge order along with his second dispute, which included the bankruptcy case number. (See Smith Decl., Ex. 1, DE # 25-1, at 12-13.) Based on this evidence, Equifax had reason to doubt the reliability or accuracy of the account information provided by FFB.

With respect to the second factor, Equifax argues that its reinvestigation complied with § 1681i(a) because it prepared an ACDV for FFB in response to plaintiff's 3 November 2014 dispute and included information on the ACDV explaining the nature of plaintiff's disputes. (Def.'s Supp. Mem., DE # 24, at 12.) Equifax maintains that it was not required to independently verify the information it received from FFB because "CRAs are not required to hire legal experts to review legal documents to determine their significance and impact on consumer's credit files." (Id. at 14.) To support this argument, Equifax once again references the bankruptcy court's order, which "generally explained that some debts are discharged and some debts are not discharged in a Chapter 13 case," and advised that legal counsel may be necessary "to determine the significance of the discharge order on unspecified accounts." (Id. at 14-15.)

While a CRA's reliance on a generally reliable source may be reasonable for the purposes of § 1681e(b), once a CRA receives notice of potentially inaccurate information in a consumer's report, a CRA can then "target its resources in a more efficient manner and conduct a more thorough investigation." Henson, 29 F.3d at 287. "[O]nce a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." Cushman, 115 F.3d at 225. Consequently, a CRA's reinvestigation under § 1681i(a) will be deemed unreasonable "when it 'overlooks or misinterprets' unambiguous and publicly available documents of legal significance." Nelson v. Ocwen Loan Servicing, LLC, No. 3:14-CV-00419-HZ, 2014 WL 2866841, *5 (D. Or. June 23, 2014) (quoting Dennis v. BEH-1, LLC, 520 F.3d 1066, 1068 (9th Cir. 2008)).

Generally, a Chapter 13 discharge releases a debtor from all debts provided by the plan. See 11 U.S.C. § 1328(a) (providing that if a Chapter 13 debtor successfully completes all payments under a confirmed plan, the indebtedness is discharged). The "Explanation of Discharge in a Chapter 13 Case," attached to the bankruptcy court's discharge order specifically notes "[t]he chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to section 502 of the Bankruptcy Code." (Smith Decl., Ex. 1, DE # 25-1, at 13.)  Moreover, the explanatory document identifies "[s]ome of the common types of debts which are not discharged in a chapter 13 bankruptcy case," including:

    a.  Domestic support obligations;
    b.  Debts for most student loans;
    c.  Debts for most fines, penalties, forfeitures, or criminal restitution
        obligations;

d.  Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

e.  Debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual (in a case filed on or after October 17, 2005)

f.  Debts provided for under section 1322(b)(5) of the Bankruptcy Code and on which the last payment is due after the date on which the final payment under the plan was due;

g.  Debts for certain consumer purchases made after the bankruptcy case was filed if prior approval by the trustee of the debtor's incurring the debt was practicable but not obtained;

h.  Debts for certain taxes to the extent not paid in full under the plan (in a case filed on or after October 17, 2005); and

i.  Some debts which were not properly listed by the debtor (in a case filed on or after October 17, 2005).

(Id.)

Despite receiving notice of the discharge from plaintiff and its public records vendor, there is no evidence that Equifax made any effort to consult the bankruptcy court's records to look at the Chapter 13 plan or to identify the type of debt at issue. Given the language in the "Explanation of Discharge in a Chapter 13 Case," it may be the case that Equifax could not have determined whether the FFB account was discharged without going through the time and expense of obtaining legal guidance. However, despite the potential costs, it might have been reasonable to require a deeper investigation after plaintiff informed Equifax that the credit report did not accurately report the FFB account as being discharged in his bankruptcy. Cf. Shchweitzer v. Equifax Info. Solutions LLC, 441 F. App'x 896, 904 (3d Cir. 2011) (reversing district court's grant of summary judgment on plaintiff's 1681i(a) claim because there was a genuine issue of material fact concerning whether Equifax's reinvestigation concerning a disputed account was reasonable where it sent ACDV forms to the creditor after plaintiff had written to Equifax three times asserting that his credit account was inaccurately reported as being included in his bankruptcy); Dennis v. BEH-1, LLC, 520 F.3d 1066, 1071 (9th Cir. 2008)

(suggesting that failure to delete a disputed item from a credit report when there are contrary items in a court file can demonstrate that a reinvestigation is unreasonable). Under these circumstances, there is a genuine issue of material fact concerning whether Equifax should have taken steps to independently verify the information provided by FFB. Accordingly, the court finds that plaintiff has made a sufficient showing of Equifax's negligent failure to reinvestigate as required by § 1681i(a).

While a jury could find that Equifax's reinvestigation of plaintiff's disputes was negligent, the court finds that Equifax's conduct did not rise to the level of willful noncompliance. To prevail on a claim for willful noncompliance of the FCRA, a plaintiff must show that a CRA either knowingly or recklessly disregarded its statutory duty. See Safeco, 551 U.S. at 53. A company recklessly violates the FCRA when its action entails "an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 68 (citation and internal quotation marks omitted). Equifax limiting its reinvestigation to contacting FFB with an ACDV regarding the disputed entry might have been negligent, but, as noted previously, relying exclusively on information furnished by a creditor has been deemed reasonable in certain circumstances. See Jianqing Wu, 2006 WL 4729755, at *7. Therefore, the court finds as a matter of law that Equifax's conduct did not rise to the level of running "a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Safeco, 551 U.S. at 69; cf. Akalwadi v. Risk Mgmt. Alternatives, Inc., 336 F. Supp. 2d 492, 511 (D. Md. 2004) (finding a genuine issue of material fact with respect to whether the furnisher of information willfully violated the FCRA where there was no evidence of what, if anything, the furnisher did to investigate the plaintiff's dispute).

### 3. Causation

Equifax also seeks summary judgment on the grounds that plaintiff has not provided sufficient evidence of damages caused by Equifax on which to base a FCRA claim. To survive summary judgment, plaintiff has the burden of establishing actual damages sustained as a result of Equifax's alleged negligent failure to reinvestigate his two disputes. See 15 U.S.C. §1681o(a)(1); Guimond v. Credit Bureau Inc., 955 F.2d 41, at *2 (4th Cir. 1992) (per curiam) (unpublished table decision) (noting that damages are an element of a negligent violation claim under the FCRA, and without evidence of damages, summary judgment is appropriate). To satisfy this burden, a plaintiff must come forward with evidence showing that the inaccuracy in the Equifax credit report was a "substantial factor" in bringing about his alleged injuries. See Philbin v. Trans Union Corp., 101 F.3d 957, 968 (3d Cir. 1996).

Plaintiff first claims that Equifax's continued reporting of inaccurate information caused him significant economic harm due to credit denials and loss of credit and loan opportunities. A CRA can be held liable only for a denial of credit occurring after a consumer triggered its duty to reinvestigate by putting it on notice that its report is disputed. Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995). At his deposition, plaintiff identified three creditors by whom he was denied credit after he submitted his first dispute to Equifax in November 2014—USAA, Springleaf Financial Services ("Springleaf"), and State Employees Credit Union ("SECU"). Plaintiff testified that Stephanie Thomas, a SECU representative, informed him that SECU would not approve his application to refinance his mortgage for a 15-year loan because "First Federal Bank is reporting very negative information about you." (Myrick Dep., DE # 27-8, at 1, 9.) He further testified that his credit score increased favorably by 50 points once FFB corrected its records to show that his account was discharged through bankruptcy. (Myrick Dep., DE # 25-1, at 19.)

Equifax responds that plaintiff's testimony fails to establish that the inaccurate report was a causal factor in plaintiff's inability to obtain credit from any of the three identified creditors. Specifically, Equifax contends that plaintiff's testimony concerning the statements made by Thomas is inadmissible hearsay and that, even if it were admissible, plaintiff's credit report contained other unfavorable information due to his bankruptcy. The court agrees that plaintiff's testimony regarding the statements made by Thomas is hearsay that the court cannot consider on a motion for summary judgment. See Philbin, 101 F.3d at 961; see also Cosmas v. Am. Exp. Centurion Bank, No. O7-6099(FLW), 2010 WL 2516468, *12 (D.N.M. June 14, 2010) (holding that plaintiff's deposition testimony regarding what a bank representative told him about his denied mortgage application was hearsay). Although plaintiff identified Thomas as a potential witness in his response to Equifax's interrogatory, he has not offered an affidavit or testimony from Thomas to support his claim. Therefore, the court will not consider Thomas's alleged statements in deciding this issue.

Equifax's argument also highlights that plaintiff put forth testimony regarding additional debts on his credit report that could have contributed to his alleged damages. In his deposition, plaintiff acknowledged that his credit report contained unfavorable information about his bankruptcy, including multiple foreclosures on rental properties that he had owned. (Myrick Dep., DE # 25-1, at 21-23.) Plaintiff also testified that he understood that his bankruptcy would negatively impact his credit score and overall credit report, and that he consequently did not "even try to get any credit for a time, because it was going to be a waste of time." (Id. at 18.) Given that plaintiff had significant financial troubles tied to his bankruptcy, reflected in correct, adverse entries on plaintiff's credit report, the court finds the evidence in the record does not

support an inference that plaintiff was denied credit or financing due to Equifax issuing and failing to correct an inaccurate credit report.

Plaintiff also claims actual damages based on emotional distress, humiliation, and embarrassment. The Fourth Circuit has recognized that damages for such injuries are recoverable under the FCRA. See Dalton, 257 F.3d at 418 (holding that a plaintiff may recover damages for emotional distress and loss of reputation as a result of false information in a credit report under FCRA). A consumer's testimony alone may suffice to establish damages for emotional distress. Sloane, 510 F.3d at 503. However, the consumer must reasonably and sufficiently explain the circumstances surrounding the injury and cannot rely on mere conclusory statements. See id. (explaining that a plaintiff must offer testimony that "'sufficiently articulate[s]' true 'demonstrable emotional distress'" (quoting Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996)).

During his deposition, plaintiff offered detailed testimony to establish his damages for emotional and mental distress. Plaintiff testified that he has "spent hundreds of hours trying to get this [issue] resolved through either research on my own or through either efforts that I made with Equifax to fix a problem that I had to depend on them to fix, and it – it has caused me a great deal of mental duress." (Myrick Dep., DE # 27-7, at 1-2.) In particular, he described being overcome by anxiety during several visits to the dentist to fix a broken tooth. (Myrick Dep., DE # 27-6, at 1-2.) Plaintiff further testified that he had never experienced an anxiety attack prior to these dental visits, including his time served in the Vietnam War. (Myrick Dep., DE # 27-7, at 2.) Plaintiff's testimony regarding his outward manifestations of mental distress is the type of evidence the Fourth Circuit has deemed sufficient to establish an injury caused by a CRA's

violation of the FCRA.  Therefore, the court finds that plaintiff has shown that he has suffered

actual damages that were caused by Equifax's allegedly negligent conduct.

In sum, the court concludes that there exists a genuine issue of material fact concerning

whether Equifax negligently failed to conduct a reasonable reinvestigation under § 1681i(a).

However, plaintiff has failed to create a genuine dispute of material fact as to Equifax's willful

failure to conduct a reasonable reinvestigation under § 1681i(a), rendering summary judgment

appropriate as to this claim.

**B.      State Law Claim**

In addition to violations of the FCRA, plaintiff claims that Equifax's recording and

publishing of false information about his alleged debt to FFB violated the UDTPA.  (Compl., DE

# 1, ¶¶ 95-104.)  Plaintiff specifically alleges that Equifax committed libel, and unlawful, unfair,

and deceptive business acts or practices.  Equifax argues that summary judgment is appropriate

because plaintiff's claims under the UDTPA are preempted by the FCRA, 15 U.S.C. § 1681h(e).

Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may
> bring any action or proceeding in the nature of defamation, invasion of privacy, or
> negligence with respect to the reporting of any information against any consumer
> reporting agency, any user of information, or any person who furnishes
> information to a consumer reporting agency, based on information disclosed
> pursuant to 1681g, 1681h or 1681m of this title, or based on information disclosed
> by a user of a consumer report to or for a consumer against whom the user has
> taken adverse action, based in whole or in part on the report except as to false
> information furnished with malice or willful intent to injure such consumer.

The Fourth Circuit has observed that "Congress intended this section's general bar on

defamation, invasion of privacy, and negligence actions to be the quid pro quo for providing full

disclosure under the FCRA."  Ross v. F.D.I.C., 625 F.3d 808, 814 (4th Cir. 2010).  Therefore,

the only exception to this bar "is a narrow one, requiring proof of 'malice, or willful intent to injure [the] consumer." Id. (alteration in original) (quoting 15 U.S.C. § 1681h(e)).

The "malice or willful intent to injure exception" in § 1681h(e) authorizes state lawsuits only for conduct that is "truly malicious" and not merely negligent. See id. at 816-17. (noting that § 1681h(e) preempts state-law libel and negligence claims where a plaintiff fails to submit sufficient evidence showing a CRA acted with malice or willful intent to injure). Because this court has found that Equifax's conduct, at best, was negligent and did not rise to the level of willfulness found in § 1681n, it follows that Equifax's conduct does not show the malice or evil motive necessary to fall under the § 1681h(e) "malice or willful intent to injure exception." See Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004) ("The malice or willful intent to injure contemplated by § 1681h(e) is of a higher degree than that which supports a claim of statutory or punitive damages under § 1681n." (citation omitted)). Because plaintiff has made no factual showing of any malice or willful intent to injure on the part of Equifax in connection with the inaccurate reporting of information, the court will grant Equifax's motion for summary judgment as it relates to plaintiff's UDTPA claim.

## III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion for summary judgment is GRANTED as to plaintiff's claims against Equifax based on violation of 15 U.S.C. § 1681e(b), willful violation of 15 U.S.C. § 1681i(a), and violation of the UDTPA. The motion for summary judgment is DENIED as to plaintiff's claim against Equifax for negligent violation of 15 U.S.C. § 1681i(a). Finally, the parties' motion for continuance of the trial date pending a ruling on this motion is

DENIED as MOOT in light of this order.

This 3 August 2017.

_____
W. Earl Britt
Senior U.S. District Judge