UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:15-CV-00562-BR

| | |
|---|---|
| GENE MYRICK, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| | ) |
| EQUIFAX INFORMATION SERVICES, LLC, | ) |
| | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on plaintiff Gene Myrick's motion for a certificate of appealability of the court's 3 August 2017 order granting in part, and denying in part, defendant Equifax Information Service, LLC's ("Equifax") motion for summary judgment. (DE # 40.) Also before the court is an alternative motion filed by plaintiff seeking reconsideration of the same order. (DE # 46.) The issues raised have been fully briefed and are now ripe for disposition.

## I. BACKGROUND

This case concerns a dispute about information that Equifax, a consumer reporting agency ("CRA"), maintained and reported with respect to an account that plaintiff held with First Federal Bank ("FFB"). On 22 October 2015, plaintiff filed this lawsuit against Equifax, seeking actual damages, punitive damages, and costs and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1. (DE # 1.) On 21 October 2016, Equifax moved for summary judgment. (DE # 23.) By order dated 3 August 2017, this court granted in part and denied in part Equifax's motion for summary judgment. (DE # 35.)

The court granted Equifax's motion as to plaintiffs FCRA and UDTPA claims with the exception of plaintiff's FCRA claim for negligent noncompliance under 15 U.S.C. § 1681. (Id. at 19.) Because the court determined that plaintiff had failed to produce sufficient evidence to support a claim for willful noncompliance under the FCRA, the court concluded that punitive damages were not available in this case. (Id. at 4.) With respect to actual damages, the court granted Equifax summary judgment on plaintiff's request for actual damages stemming from economic loss, but denied summary judgment on plaintiff's request for actual damages for his mental and emotional distress. (Id. at 16-17.)

## II. ANALYSIS

The court will first consider whether to grant plaintiff's motion for reconsideration then address the motion for a certificate of appealability.

**A. Motion for Reconsideration**

Plaintiff asks the court to reconsider the portion of its order granting summary judgment in favor of Equifax on his claim for willful violation of 15 U.S.C. § 1681i(a) of the FCRA. (Pl.'s Supp. Mem., DE # 47, at 1-7.) Plaintiff also urges the court to reconsider its judgment in favor of Equifax with respect to his request for economic damages. (Id. at 7-10.)

**1. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 54(b), in the absence of an express order directing final judgment as to certain claims or parties:

> [A]ny order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties, and *may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities*.

Fed. R. Civ. P. 54(b) (emphasis added). Pursuant to this rule, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003).

"The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders." Saint Annes Dev. Co. v. Trabich, 443 F. App'x 829, 832 (4th Cir. 2011) (quoting Am. Canoe, 326 F.3d at 514-15)). Nevertheless, a motion to reconsider an interlocutory order is appropriate only in "certain, limited circumstances." Wiseman v. First Citizens Bank & Trust Co., 215 F.R.D. 507, 509 (W.D.N.C. 2003). Motions to reconsider are limited to the purpose of allowing the court to "correct manifest errors of law or fact or to consider newly discovered evidence," Fed. Deposit Ins. Corp. v. Willetts, 882 F. Supp. 2d 859, 867 (E.D.N.C. 2012), and are improper if they serve to merely ask the court "to rethink what the Court had already thought through rightly or wrongly," Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

**2. Willfulness Claim**

Plaintiff first seeks reconsideration on the issue of whether Equifax's conduct rose to the level of willful noncompliance under 15 U.S.C. § 1681i(a), a provision of the FCRA requiring CRAs to conduct reasonable reinvestigations into disputed information. (Pl.'s Supp. Mem., DE # 47, at 1.) He specifically argues that the court should reconsider this issue in light of the recent decision in Daugherty v. Ocwen Loan Servicing, LLC, No. 16-2243, 2017 WL 3172422 (4th Cir. July 26, 2017), in which the Fourth Circuit Court of Appeals "approved letting a case similar to the one at bar to go to the jury on willfulness/recklessness." 2017 WL 3172422 at 6.

In Daugherty, the Fourth Circuit considered a mortgage servicer's argument that the evidence presented at trial failed to show that it had willfully violated the FCRA. Id. at *6-8. The Fourth Circuit upheld the jury's determination of willfulness on the ground that the jury was presented evidence that "Ocwen possessed the information in its own records necessary to correct the erroneous data identified [on plaintiff's credit report]" and, consequently, "the jury could have concluded that it was reckless for Ocwen, after having received [plaintiff's dispute], not to investigate and correct the erroneous information." Id. at *7. The court further noted that the "Ocwen's repeated failure to correct errors over a 17-month period" supported a conclusion that it acted recklessly and was not merely negligent. Id. at *8. Relying on the court's reasoning in Daugherty, plaintiff now contends that the evidence in this case supports a finding of willfulness because Equifax possessed information in its own records that could have been used to correct a notation on his credit report showing a balance due and owing on his FFB account after he notified Equifax that the FFB account had been discharged in bankruptcy. (Pl.'s Supp. Mem., DE # 47, at 6.)

Equifax responds that the facts in Daugherty are inapposite because there is no evidence in the record of Equifax having plaintiff's complete bankruptcy file, or having knowledge of the specific accounts discharged in bankruptcy. (Def.'s Resp., DE # 48, at 4-11.) Plaintiff concedes that he does not have knowledge of how much of the bankruptcy record was sent to Equifax, and therefore, does not know if Equifax possessed the information necessary to correct the dispute in its database. (Pl.'s Reply, DE # 49, at 5-6.) Nonetheless, plaintiff relies on Equifax's admission that it received notice of both the bankruptcy court's discharge and the bankruptcy court case number from Lexis-Nexis, it public records vendor. (Id. at 6.) Plaintiff contends that this information, taken together, constituted constructive possession of the bankruptcy court record

4

because it could have been used to access and view the entire record via Public Access to Electronic Court Records ("PACER"). (Id.)

Based on the evidence in the record, it is clear that Equifax did not have information about the discharge status of the FFB account in its possession. This case is therefore factually distinguishable from Daugherty. However, as plaintiff points out, the information Equifax did possess in its records would have enabled it to confirm the status of the FFB account through an identified source, i.e., PACER. The court therefore agrees with plaintiff's argument that the evidence shows that Equifax had information in its possession that it could have used to verify whether the FFB account had been discharged in bankruptcy.

Taking this evidence into consideration, the court finds that plaintiff has presented convincing reasons for the court to reconsider this issue. In moving for summary judgment, Equifax argued that it had conducted a reasonable reinvestigation by directly contacting FFB to verify the status of the account. (Def.'s Supp. Mem., DE # 24, at 12-13.) The court held that, based on the decision in Jianqing Wu v. Trans Union, No. AW-03-1290, 2006 WL 4729755, at *7 (D. Md. May 2, 2006), Equifax's reliance on information furnished exclusively by FFB did not rise to the level of willful conduct. (See Summary Judgment Order, DE # 35, at 14.) As noted by the court, the decision in Jianqing Wu was based on "the nature of [p]laintiff's disputes with his creditors," specifically the fact "[t]he only way for Equifax to verify plaintiff's claims was for Equifax to contact these creditors directly." (Id. at 10 (quoting Jianqing Wu, 2006 WL 4729755, at *8.).) Unlike the situation in Jianqing Wu, this is not a case where contacting the creditor was the only way for Equifax to verify the disputed information. Because plaintiff has shown there was an alternative way for Equifax to verify the status of the FFB account, there is a factual issue as to whether Equifax conducted a reasonable investigation by limiting its efforts to

5

confirming the disputed information with FFB. The court therefore reverses its earlier ruling that summary judgment should be granted with respect to plaintiff's claim for willful violation of 15 U.S.C. § 1681i(a).

### 3. Economic Damages

Plaintiff also asks the court to reconsider its ruling that he did not proffer sufficient evidence to support his request for economic damages. (Pl.'s Supp. Mem., DE # 47, at 7.) Specifically, he argues that the court misapprehended the applicable law in deciding to exclude certain portions of his deposition testimony on hearsay grounds. (Id. at 8.)

In opposing the motion for summary judgment on this issue, plaintiff argued that he produced admissible evidence of economic damages through his testimony that Stephanie Thomas, a representative from State Employees Credit Union ("SECU"), told him that SECU would not approve his application to refinance his mortgage because of the inaccurate entry on his credit report. (See Pl.'s Resp., DE # 27, at 13.) The court concluded that plaintiff's testimony was inadmissible hearsay because he did not provide an affidavit or testimony from Thomas to support his claim. (Summary Judgment Order, DE # 35, at 16.) The court agrees with plaintiff that a hearsay statement can be considered on summary judgment when it is capable of being admissible at trial. See Fed. R. Civ. P. 56(c)(2); Arthur v. Pet Dairy, 593 F. App'x 211, 215 n.3 (4th Cir. 2015) (rejecting appellant's argument that the court could not consider written complaints about his performance in assessing summary judgment motion because the complaints would be admissible at trial under the state of mind exception to the hearsay rule). Here, plaintiff identified the person who relayed this information and listed her as a potential witness in response to Equifax's interrogatory. Because plaintiff states that he intends to call Thomas as a witness to testify as to what she told plaintiff, (Pl.'s Reply, DE # 49, at 8),

this testimony may be considered on summary judgment because it can be "presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). Reconsideration thus is appropriate.

As noted in the summary judgment order, to survive summary judgment, a FCRA plaintiff has the burden of establishing actual damages sustained as a result of the CRA's failure to reinvestigate. See 15 U.S.C. § 1681o(a)(1). To establish economic damages, a plaintiff must present sufficient evidence that the inaccurate information was a "substantial factor" that brought about the denial of credit. See Philbin v. Trans Union Corp., 101 F.3d 957, 968 (3d Cir. 1996). In this case, plaintiff acknowledged that he had significant financial troubles tied to his bankruptcy, including multiple foreclosures, which were reflected in correct, adverse entries on his credit report. (Myrick Dep., DE # 25-1, at 21-23.) However, plaintiff also testified that Thomas informed him that SECU would not approve his application because "First Federal Bank is reporting very negative information about you." (Id. at 1, 9.) Given that Thomas specifically referenced the inaccurate information on plaintiff's credit report as the reason for SECU's denial, a reasonably jury could conclude that the inaccuracy was a substantial factor that brought about the denial of credit. Because plaintiff has produced sufficient evidence of economic damages as to this particular creditor, the court reverses its decision to grant Equifax's motion for summary judgment with respect to the issue of economic damages.

**B. Motion for a Certificate of Appealability**

Plaintiff also filed a request for a certificate of appealability as to the 3 August 2017 order, seeking to appeal the court's grant of summary judgment on the issue of willful compliance under 15 U.S.C. § 1681i(a). (DE # 40.) Because the court has reversed its grant of

summary judgment on this issue, the request for a certificate of appealability will be denied as moot.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration, (DE # 46), filed as an alternative to his motion for a certificate of appealability, is GRANTED. Upon reconsideration of Equifax's motion for summary judgment, the court DENIES summary judgment as to plaintiff's claim for willful violation of 15 U.S.C. § 1681i(a), as well as his request for economic damages. Plaintiff's motion for a certificate of appealability, (DE # 40), is DENIED AS MOOT. Jury trial is SET for 29 January 2018.

This 23 October 2017.

_____
W. Earl Britt
Senior U.S. District Judge